461 So.2d 1095 (1984)
Charles IMBORNONE
v.
DEPARTMENT OF POLICE, CITY OF NEW ORLEANS.
No. CA-2072.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1984.
Writ Granted February 4, 1985.
*1096 Darleen M. Jacobs, P.C., New Orleans, for plaintiff-appellant Charles Imbornone.
Salvador Anzelmo, City Atty., Harold D. Marchand, Asst. City Atty., New Orleans, for defendant-appellee Dept. of Police, City of New Orleans.
Before GULOTTA, KLEES and ARMSTRONG, JJ.
KLEES, Judge.
This is an appeal from a decision of the New Orleans Civil Service Commission affirming the New Orleans Police Department's demotion of plaintiff from the rank of Police Sergeant to the rank of Police Officer I. The reason for plaintiff's demotion was his alleged violation of the department's sick leave policy. On appeal, plaintiff Imbornone contends that his demotion was arbitrary and capricious, and further that the sick leave regulation, known as "ASOP 75", is unconstitutional. After reviewing the record, we have determined that the police department's action was indeed arbitrary and capricious. Moreover, we find that the regulation, although not unconstitutional on its face, is unconstitutional as applied in this case.
Mr. Imbornone has been a member of the police force for over sixteen years, and, until his demotion, had amassed a distinguished record as a police officer, including several citations for bravery and the 1981 Veterans of Foreign Wars policeman of the year award. He was promoted to sergeant in 1975. While serving as a policeman, plaintiff attended college under the LEAP program (a program that assists law enforcement personnel in furthering their educations) and earned a B.A. in Criminology in 1973. He continued his schooling independently and in 1975 acquired a Masters degree in Criminal Justice. In 1981, Mr. *1097 Imbornone entered Loyola University Law School and began attending classes parttime at night while still working as a policeman.
On February 19, 1983, plaintiff injured his neck, shoulders and back while attempting to subdue a criminal suspect, and was subsequently placed on Injured on Duty (I.O.D.) leave by the police department. In June of 1983, while he was out on leave, his police captain attempted to contact him by telephone to inform him of an impending court appearance and found that he was not home. This incident prompted an investigation into plaintiff's conduct to determine whether he was in violation of ASOP 75, the department rule regarding sick leave.
ASOP 75 provides, in pertinent part:
7. Conduct While on Sick Leave

A member on sick leave shall remain in his residence or approved place of confinement for the entire sick leave period, except to visit a physician, hospital or clinic, or to obtain meals or medicine. The member shall notify his unit of assignment before leaving and upon returning from such a visit....
ASOP 75 is applicable to plaintiff's situation by virtue of ASOP 76, regarding injuries, which states:
13. Member's Responsibilities

All members absent from duty because of job related injury or recurrence are subject to the same regulations governing the conduct of employees absent to illness.
As part of its investigation into the plaintiff's alleged violation of the above rules, the police department conducted a disciplinary hearing on July 13, 1983. At this hearing, plaintiff readily admitted that while he was being carried on I.O.D. leave, he had left his residence on numerous occasions to attend law school without notifying his unit of assignment. Following the hearing, plaintiff was informed in writing by the Superintendent of Police that, due to his transgression of the department rules regarding sick leave, he was being demoted from sergeant to police officer, effective July 24, 1983.
Mr. Imbornone appealed his demotion to the Civil Service Commission. At the Commission hearing, plaintiff reiterated that he had left his residence to attend law school while he was on I.O.D. status, but explained that he assumed he had permission to ignore ASOP 75 because his physician had sent a letter through channels to the police physician stating that Mr. Imbornone, although unable to do police work, was capable of attending law school. Mr. Imbornone testified that it was his understanding that the established practice in the department was that an officer on I.O.D. status needed only to produce a letter from his physician requesting permission for the officer to be exempt from the sick leave rules. He admitted that he did not follow up or check to see if the Superintendent had, in fact, granted him permission to ignore ASOP 75. Following the hearing, the Civil Service Commission found that the police department had proven satisfactorily that Officer Imbornone had violated ASOP 75, and further that the rule was not unconstitutional because it was rationally related to the ends it sought to achieve. The Commission therefore affirmed the department's action, and this appeal resulted.
The appropriate standard of review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753, 754 (La. 1983). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the "efficient operation" of the public service; moreover, the appointing authority (Superintendent of Police) must demonstrate by a preponderance of the evidence that the conduct did in fact impair the efficiency and orderly operation of the public service Id.
Applying this standard, we hold that the police department failed to meet *1098 its burden of proof in this case. Plaintiff was injured in the line of duty and had been certified by two doctors, his personal physician and the police department physician, as being physically unable to return to police work. Under the circumstances, we fail to see how plaintiff's leaving his residence to attend law school could have possibly impaired the efficient operation of the police department; nor did the police department introduce any evidence to this effect. At the Civil Service Commission hearing, the Superintendent of Police testified that the reason for the sick leave rule is to "control the use and abuse of sick time" and "to maintain a certain number of police officers for duty at all times." It was explained that police officers are entitled to four sick days per year without having to show a doctor's certificate, and they may cumulate any sick time not used in prior years. We agree with the Commission that, under this system, the restrictions on the use of sick time contained in ASOP 75 tend to prevent malingering and therefore bear a substantial relationship to the efficient operation of the police department.
However, in this case, the plaintiff was not utilizing sick time, but was injured on duty. According to the Superintendent, when an officer is injured on duty, the same restrictions apply as when on sick leave, even though the injured officer does not actually use any of his sick time. Nevertheless, at no time during the hearing did the police department produce any evidence to show that the violation of ASOP 75 by plaintiff, who was certifiably injured on duty, actually impaired the efficient operation of the police department. Because the department presumably does not place policemen on I.O.D. leave without certifying that they are truly injured, there is no potential for "abuse" of this leave, as there might be for an officer using sick time. Moreover, if an officer is physically unable to do police work, how can confining him to his home possibly serve the objective of "maintaining a certain number of police officers for duty at all times?" Certainly the police department is not suggesting that it would deliberately place the safety of the public in the hands of an incapacitated policeman. Because the police department failed to prove that the application of ASOP 75 to the plaintiff in this case bore a real and substantial relationship to the efficient operation of the department, we hold that plaintiff's demotion was arbitrary and capricious.
Turning to the constitutional issue, we must bear in mind that this court has recently declared ASOP 75, the same regulation in controversy here, to be constitutional on its face. Bruno v. Department of Police, 451 So.2d 1082 (La.App. 4th Cir. 1983). Our decision today does not alter Bruno. In Bruno, a policeman was dismissed from the force on account of numerous documented incidences in which he used accumulated sick days to make public appearances in his capacity as union leader of the Policeman's Association of New Orleans. Rejecting the notion that police department sick leave regulations must withstand strict scrutiny, this court found that ASOP 75 was constitutional on its face because it rationally related to the maintenance of discipline and morale within the department by assuring that policemen did not regard sick leave as the equivalent of paid vacation. Bruno, supra at 1100.
Although the instant case concerns the same rule that was involved in the Bruno decision, the factual situation is totally distinguishable from Bruno. Unlike Officer Bruno, Mr. Imbornone was injured on duty. While the confinement of an allegedly sick policeman to his home may be rationally related to discouraging the abuse of sick time, no such rational relationship exists with regard to a policeman who is certifiably injured on duty. Without this rational relationship, a restriction which potentially infringes upon such basic constitutional rights as the right to vote, right to travel, freedom of religion and freedom of association cannot stand. See Pienta v. Village of Schaumburg, 710 F.2d 1258 (7th Cir.1983). Therefore, although ASOP 75 is constitutional on its face, it was unconstitutionally *1099 applied to Officer Imbornone, who was not on sick leave but was injured on duty.
In making this distinction between the instant case and Bruno, we are fully cognizant that officer Imbornone's demotion, although primarily based upon his conduct while on I.O.D. leave, was also based to some degree upon the police department's unproven allegation that Imbornone misused sick time in 1982, before his injury. At the Commission hearing, plaintiff was questioned about the fact that he used thirty-three days of sick leave in 1982, thirty of which roughly coincided with the dates final examinations were given at his law school. Under oath, Mr. Imbornone denied that he took any sick days in 1982 without actually being ill. (Rec.Vol. II, tr. pp. 125-131).
The Commission, in its decision, noted that the plaintiff's testimony in this regard was not credible, and stated that: "In and of itself, Officer Imbornone's abuse of ASOP 75 in 1982 would be sufficient cause for demoting him." (Comm. decision, p. 3). Our review of the record shows this statement by the Commission to be manifestly erroneous. In plaintiff's official letter of demotion, the Superintendent cited fiftynine documented incidences between February 21st and June 8th of 1983 (while plaintiff was on I.O.D. leave) in which the department could prove that plaintiff had violated ASOP 75 by leaving his residence for a purpose other than to visit a doctor, obtain meals or medicine. Indeed, the plaintiff admitted to these transgressions at his disciplinary hearing and again at the Commission hearing. At the close of the letter, the Superintendent also noted that Mr. Imbornone had taken thirty-three sick days in 1982 and six days in 1983 prior to his injury on duty, inferring that these days were somehow unjustified. However, unlike the first instances, the department never introduced any evidence to show that Mr. Imbornone actually left his residence in violation of ASOP 75 on any of these days. Under the circumstances, it was manifest error for the Commission to rule that the plaintiff's demotion would have been justifiable if based solely on the department's bare allegations that Mr. Imbornone had abused sick leave policy prior to his injury. Even in Bruno the department had documented proof that Officer Bruno had made radio and television appearances and even traveled out of town to give speeches while on sick leave. There was no such showing here. In the absence of any proven violation of ASOP 75 by plaintiff prior to his injury, we find that the plaintiff's demotion was based primarily on his conduct while injured on duty, an application of ASOP 75 which we hold to be unconstitutional.
For these reasons, we reverse the decision of the Civil Service Commission and order that plaintiff Imbornone be reinstated to the rank of sergeant, with full back pay and benefits. All costs to be paid by Defendants.
REVERSED.