|, JONES, J.
Appellant, the New Orleans Police Department, appeals the decision of the Civil Service Commission of the City of New Orleans reinstating the Appellees, Brian Danigole and Daniel Chauvin, to their po *684 sitions as New Orleans Police Officers and restoring all lost pay and other benefits while on suspension. We reverse.
Facts
Officers Brian Danigole and Daniel J. Chauvin were patrolling the Magnolia Housing Project in New Orleans on February 4, 1999 at approximately 9:30 p.m. They observed smoke coming out of a first floor apartment and immediately notified the Police Department (hereinafter the “NOPD”), the New Orleans Fire Department and the EMS. There were many residents standing outside in the courtyard when they arrived on the scene. The officers heard people screaming and some of the people in the courtyard told the officers that there were people in the burning building. Because the extent of the fire was unknown, Officers Danigole and Chau-vin entered the building fearing that there might be people on the second floor.
| j>,The Civil Service Commission established that Officer Danigole helped Delores Myles and her granddaughter escape from Ms. Myles’ second floor apartment. After continuing on to the third floor, the officers did not encounter any more residents so they exited the building. Officer Danigole testified at the hearing before the Commission that once back in the courtyard, people standing close to him informed him that there might be additional people in the building. He further testified that he and Officer Chauvin re-entered the building and attempted to get into the apartment where the source of the fire was, but were unsuccessful.
Within the days following the fire, Officers A1 Gonzales and Mike Rousell recommended that Officers Danigole and Chau-vin be written up for an award for their actions. Sgt. Steven Gaudet prepared the recommendation based on the information he received from Officers Danigole and Chauvin. The written report was not presented to the officers for their review. Subsequently, Officers Danigole and Cau-vin were recognized for their actions at an NOPD awards ceremony.
After the officers received their life-saving medals, eyewitnesses came forward with different accounts of the event. Embarrassed by media coverage, Sgt. Paul Morretti was assigned to investigate the matter further. He concluded that Officers Danigole’s and Chauvin’s depiction of the event was distorted. He further found that Officers Danigole and Chauvin were previously disciplined for falsifying another life-saving event.
The NOPD immediately terminated Officers Danigole and Chauvin and determined that they were largely to blame for the inaccuracies in the description of the occurrence of the event. A disciplinary investigation that is not the subject of this appeal commenced against Sgt. Gaudet. Although Officers Danigole and Chauvin had separate cases, the two cases were consolidated before the Civil 1 {¡Service Commission which concluded in its November 16th, 2000 ruling that the NOPD failed to carry its burden of proving that the officers tried to mislead the department. Officers Danigole and Chauvin were ordered reinstated to their positions and restored all lost pay and benefits. It is from this judgment that the NOPD appeals.
Argument
The NOPD argues that the Civil Service Commission acted arbitrarily and capriciously when it ignored the competent, credible and consistent evidence presented by the appointing authority which resulted in the reinstatement of Officers Danigole and Chauvin to the NOPD. The NOPD further argues that the Civil Service Commission heard testimony from members of the New Orleans Fire Department, investigating officers and indepen *685 dent eyewitnesses which confirmed that Officers Danigole and Chauvin did not accurately report the events which lead them to receive their distinguished awards. We agree.
The Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 689 (1958). The appellate court’s standard of review is established by the constitutional rule that the commission’s decision is subject to review on any question of law or fact. Accordingly, a court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding whether to affirm the commission’s factual findings. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1978).
LOfficer Cyril Evans, who was on duty and reported to the scene of the fire on February 4th, 1999, testified that he did not hear anyone screaming or yelling when he arrived on the scene, nor was there heavy smoke as described by Officers Dan-igole and Chauvin. New Orleans Fire Department Captain Gary Steven Civello was with the first unit to report to the fire on Magnolia Street. Capt. Civello testified that he witnessed smoke coming from the first floor as a result of a mattress fire. He admitted that the smoke was not heavy and classified the fire as small. He further testified that no one was trapped in the building and that he did not call for an evacuation of the site because he did not find that the situation was life threatening.
A major aspect of this appeal is the use of the words chosen by Sgt. Gaudet to describe the event. The Commission’s findings indicate that Sgt. Gaudet admitted that neither Officer Danigole nor Officer Chauvin told him that they physically led people out of the burning building and that Sgt. Gaudet concluded this on his own. However, we find that Sgt. Gaudet’s written interpretation has little significance in comparison to Officers Danigole’s and Chauvin’s acceptance of the medals. Both officers were well aware of the circumstances which prompted the granting of the awards by the NOPD. We find that the officers had a duty in response to or prior to accepting the awards to rebut Sgt. Gau-det’s depiction of the event and clarify any ambiguity.
The award read, “Even though the residents were screaming and in a state of panic, the officers were able to quickly bring them to their senses and lead them down the stairwell to the safety of the courtyard”. Despite the overwhelming contradictory testimony by many eyewitnesses, the officers accepted the awards without issue. We disagree with the Commission’s finding that the NOPD did not Lcarry its burden of proving that Officers Danigole and Chauvin tried to mislead the department. We find that their actions and/or inactions were clearly misleading and they did not take advantage of any opportunity to correct the situation.
In judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion. Save Ourselves, Inc. v. The Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984).
Citing the decision of the Louisiana Supreme Court in Newman v. Department of Fire, 425 So.2d 753 (La.1983), this court *686 held in Stevens v. Department of Police, 2000-1682, p.8 (La.App. 4 Cir 5/9/01), 789 So.2d 622, 627 that:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman, supra. Indeed, the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public’s safety and operate as quasi-military institutions where strict discipline is imperative.
Officers Danigole’s and Chauvin’s actions and inactions impaired the efficiency of the public service.
In the instant case, we find that the Commission was incorrect in its ruling. The testimony clearly indicates that the reports Officers Danigole and Chauvin gave of the fire were so inaccurate thus causing misinterpretation by Sgt. Gaudet. We also observe that neither officer came forward to correct Sgt. Gaudet’s findings. The Commission was incorrect in rejecting the disciplinary action taken | fiby the NOPD against Officers Danigole and Chauvin which results in the Civil Service Commission being manifestly erroneous or arbitrary and capricious.
We further find that public interest was not served because society places a great weight of responsibility upon officers of the law and that weight is lessened when police officers (or any other public officials) give misleading information in order to be recognized. The Commission’s judgment failed to demonstrate the seriousness of the officers’ actions and justice was not properly served. The NOPD met its burden of proof by a preponderance of the evidence that the actions of Officers Danigole and Chauvin impaired the police department’s ability to serve the public without mockery and in consideration of the seriousness of their duties and responsibilities. “The appointing authority has the burden of proving by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service.” Cittadino v. Department for Police, 558 So.2d 1311 (La.App. 4th Cir.1990).
Decree
For the reasons stated herein, we find that the Civil Service Commission was erroneous in reinstating Officer Danigole and Officer Chauvin to their positions as police officers. We further find that the Civil Service Commission was erroneous in restoring all lost benefits and lost pay to Officer Danigole and Officer Chauvin. The Civil Service Commission was arbitrary and capricious in its finding, therefore we reverse the judgment of the Civil Service Commission and reinstate the decision of the appointing authority which resulted in the termination of Brian Danigole and Daniel Chauvin as New Orleans police officers.

REVERSED.